1   JAMES M. WAGSTAFFE (95535)
    MICHAEL VON LOEWENFELDT (178665)
2   ADRIAN J. SAWYER (203712)
    CHEROKEE D.M. MELTON (243265)
3   **KERR & WAGSTAFFE LLP**
    100 Spear Street, Suite 1800
4   San Francisco, CA 94105–1528
    Telephone: (415) 371-8500
5   Fax: (415) 371-0500

6   MARY ANNE WAGNER (167214)
    CITY ATTORNEY
7   **CITY OF SAUSALITO**
    420 Litho Street
8   Sausalito, California 94965
    Telephone: (415) 453-8866
9   Fax: (415) 289-4167

10
    Attorneys for Defendant
11  CITY OF SAUSALITO

12              **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14              **SAN FRANCISCO DIVISION**

15  PETER MORTON; SAUSALITO ALTA          Case No. C 07-6220 VRW
    MIRA LLC, a Nevada limited liability
16  company; HARRISON VENTURES LLC, a     **NOTICE OF MOTION AND MOTION
    California limited liability company; and  TO DISMISS OR STAY; SUPPORTING
17  BULKLEY VENTURES LLC; a California    MEMORANDUM OF POINTS AND
    limited liability company, REBECCA WATT;  AUTHORITIES**
18  CONNIE COWDEN; KIMBERLY
    MITCHELL-SELLWOOD; and STEPHANIE
19  LYNDE,                                Date:      February 14, 2008
                                          Time:      2:30 p.m.
20                                        Courtroom: 6
                    Plaintiffs
21                                        Hon. Vaughn R. Walker

22  v.

23  CITY OF SAUSALITO, a California
    municipality,
24
                    Defendant.
25

26

27

28

KERR
&
WAGSTAFFE
LLP

# TABLE OF CONTENTS

*Page*

I.    INTRODUCTION ................................................................. 2

II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................... 4

    A.    AMTP Begins Operation And Sausalito Files The Marin County Action ........... 4

    B.    The AMTP Operators File This Action To Enjoin The Marin County Action ....................................................................................... 6

III.  LEGAL ARGUMENT ............................................................... 8

    A.    This Action Must Be Dismissed Under The <u>Noerr-Pennington</u> Doctrine ............ 8

        1.    <u>Noerr-Pennington</u> protects the rights of all persons, including cities, to petition the courts for adjudication of their rights .................... 8

        2.    Sausalito's conduct is privileged under <u>Noerr-Pennington</u> ..................... 9

    B.    The Marin County Action Should Not Be Enjoined In Any Event ................... 10

        1.    The FHA and ADA claims fall within the Anti-Injunction Act ............ 11

        2.    This action also falls within the <u>Younger</u> abstention doctrine ................ 12

    C.    The Individual Plaintiffs Have Not Suffered An Injury In Fact and Therefore Lack Standing Under Article III ......................................... 16

    D.    There Are Additional Substantive Problems With Plaintiffs' Claims That Also Warrant Dismissal .................................................... 18

        1.    The 42 U.S.C. § 1983 claims should be dismissed for failure to state a claim .................................................................. 18

        2.    Plaintiffs' allege no non-privileged conduct that can give rise to liability on any of their theories ............................................ 21

IV.   CONCLUSION .................................................................... 21



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

*Page*

### <u>*Cases*</u>

<u>Alsbrook v. City of Maumelle</u>,
184 F.3d 999 (8th Cir. 1999) .................................................................... 19

<u>Alton Box Bd. Co. v. Esprit de Corp.</u>,
682 F.2d 1267 (9th Cir. 1982) .................................................................. 11

<u>AmerisourceBergen Corp. v. Roden</u>,
495 F.3d 1143 (9th Cir. 2007) ...................................................... 12, 13, 14

<u>Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs</u>,
398 U.S. 281 (1970)................................................................................. 11

<u>Barber v. Rancho Mortgage & Investment Corp.</u>,
26 Cal. App. 4th 1819 (1994) .................................................................. 13

<u>Bell Atlantic Corp. v. Twombly</u>,
127 S.Ct. 1955 (2007).............................................................................. 21

<u>Bennett v. Medtronic</u>,
285 F.3d 801 (9th Cir. 2002) ................................................................... 11

<u>Bill Johnson's Restaurants, Inc. v. N.L.R.B.</u>,
461 U.S. 731 (1983)................................................................................... 9

<u>Black v. Department of Mental Health</u>,
83 Cal. App. 4th 739 (2000) .................................................................... 13

<u>Board of Regents of State Colleges v. Roth</u>,
408 U.S. 564 (1972)................................................................................. 19

<u>Branch v. Tunnell</u>,
14 F.3d 449 (9th Cir. 1994) ....................................................................... 4

<u>California v. Randtron</u>,
284 F.3d 969 (9th Cir. 2002) ................................................................... 12

<u>Canatella v. California</u>,
404 F.3d 1106 (9th Cir. 2005) ................................................................. 15

<u>Casa Marie, Inc. v. Superior Court of Puerto Rico</u>,
988 F.2d 252 (1st Cir. 1993)............................................................... 11, 14

<u>Chick Kam Choo v. Exxon Corp.</u>,
486 U.S. 140 (1988)................................................................................. 12

<u>D.L. v. Unified School District No. 497</u>,
392 F.3d 1223 (10th Cir. 2004) .......................................................... 14, 15

<u>Damascus v. Office of the Attorney General</u>,
1995 WL 261414 (N.D. Cal. May 2, 1995) ............................................. 14

KERR
&
WAGSTAFFE
LLP

Doran v. Salem Inn, Inc.,
    422 U.S. 922 (1975) ............................................................................................... 15

Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,
    365 U.S. 127 (1961) ................................................................................................. 8

Empress LLC v. City & County of San Francisco,
    419 F.3d 1052 (9th Cir. 2005) ................................................................................. 8

Foss v. Nat'l Marine Fisheries Serv.,
    161 F.3d 584 (9th Cir. 1998) ................................................................................. 20

Gilbertson v. Albright,
    381 F.3d 965 (9th Cir. 2004) ............................................................... 12, 13, 14, 16

Green v. City of Tucson,
    255 F.3d 1086 (9th Cir. 2001) ............................................................................... 16

Grey v. Wilburn,
    270 F.3d 607 (8th Cir. 2001) ................................................................................. 19

Hapgood v. City of Warren,
    127 F.3d 490 (6th Cir. 1997) ................................................................................. 13

Hemlock Crossing, LLC v. Logan Township,
    2007 WL 1203015, 2007 U.S. Dist. LEXIS 29731 (W.D. Pa. Apr. 23, 2007)............. 14

Hicks v. Miranda,
    422 U.S. 332 (1975) ........................................................................................ 15, 16

Holbrook v. City of Alpharetta,
    112 F.3d 1522 (11th Cir. 1997) ............................................................................. 19

Hudson v. City of Chicago,
    374 F.3d 554 (7th Cir. 2004) ................................................................................. 20

Huffman v. Pursue, Ltd.,
    420 U.S. 592 (1975) ............................................................................................... 13

Intri-Plex Technologies, Inc. v. Crest Group, Inc.,
    499 F.3d 1048 (9th Cir. 2007) ................................................................................. 4

Kimes v. Stone,
    84 F.3d 1121 (9th Cir. 1996) ................................................................................... 8

Korean Buddhist Dae Won Sa Temple of Hawaii v. City and County of Honolulu,
    952 F. Supp. 679 (D. Hawaii 1996) ....................................................................... 13

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ........................................................................................ 16, 17

Lujan v. G & G Fire Sprinklers, Inc.,
    532 U.S. 189 (2001) ............................................................................................... 20

M&A Gabaee v. Community Redevelopment Agency of City of Los Angeles,
    419 F.3d 1036 (9th Cir. 2005) ............................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KERR
&
WAGSTAFFE
LLP

Manistee Town Ctr. v. City of Glendale,
    227 F.3d 1090 (9th Cir. 2000) ............................................................ 8, 9, 10

McCaffrey v. Preston,
    154 Cal. App. 3d 422 (1984) .................................................................... 6

Professional Real Estate Investors, Inc. v. Columbia Pictures, Inc.,
    508 U.S. 49 (1993) ............................................................................. 9, 10

Rodriguez v. Westhab, Inc.,
    833 F. Supp. 425 (S.D.N.Y. 1993) ........................................................ 11

Safe Haven Sober Houses, LLC v. City of Boston,
    517 F. Supp. 2d 557 (D. Mass. 2007) ................................................... 11

Sandpiper Village Condominium Assoc., Inc. v. Louisiana-Pacific Corp.,
    428 F.3d 831 (9th Cir. 2005) ........................................................... 11, 12

Schmier v. U.S. Court of Appeals for the Ninth Circuit,
    279 F.3d 817 (9th Cir. 2002) ................................................................ 17

Sosa v. DIRECTV, Inc.,
    437 F.3d 923 (9th Cir. 2006) .............................................................. 8, 9

Sutton v. Teets,
    2006 WL 1465232, 2006 U.S. Dist. LEXIS 37016 (N.D. Cal. May 24, 2006) ............. 13

Thornton v. City of St. Helens,
    425 F.3d 1158 (9th Cir. 2005) .............................................................. 18

United Mine Workers v. Pennington,
    381 U.S. 657 (1965) ............................................................................... 8

Vinson v. Thomas,
    288 F.3d 1145 (9th Cir. 2002) .............................................................. 19

White v. Lee,
    227 F.3d 1214 (9th Cir. 2000) ......................................................... 8, 10

Woodfeathers, Inc. v. Washington County, Oregon,
    180 F.3d 1017 (9th Cir. 1999) .............................................................. 13

World Famous Drinking Emporium, Inc. v. City of Tempe,
    820 F.2d 1079 (9th Cir. 1987) .............................................................. 13

Younger v. Harris,
    401 U.S. 37 (1971) ........................................................................ passim

### *Statutes*

28 U.S.C. § 2283 .......................................................................... 1, 10, 11

42 U.S.C. § 1983 ................................................................................. passim

42 U.S.C. § 3613 ...................................................................................... 13

1

Fed. R. Civ. Proc. § 12(b) ................................................................. 1, 4

2

Health and Safety Code § 11834.22 ........................................................ 6

3

Health and Safety Code § 11834.23 ........................................................ 5

4

### *Constitutional Provisions*

5

U.S. Const., Amend. I. ........................................................................ 8

6

U.S. Const., Amend. XIV ................................................................. 19

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on February 14, 2008 at 2:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Vaughn R. Walker in Courtroom 6, 17th floor, of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California, 94102, defendant City of Sausalito will and hereby does move the Court to dismiss or stay the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), 28 U.S.C. § 2283, and Younger v. Harris, 401 U.S. 37 (1971).

The motion is brought on the following grounds:  (1) plaintiffs' claims arise from protected petitioning activity by the City of Sausalito, and are thus barred by the Noerr-Pennington doctrine; (2) plaintiffs' requests for declaratory and injunctive relief violate the Anti-Injunction Act, 28 U.S.C. § 2283; (3) plaintiffs' claims seek to interfere with an ongoing state lawsuit and should be dismissed and/or stayed pursuant to Younger v. Harris, 401 U.S. 37 (1971) and its progeny; (4) individual plaintiffs Morton, Watt, Cowden, Mitchell-Sellwood, and Lynde have suffered no injury in fact and thus lack Article III standing to bring this suit; and (5) plaintiffs' claims fail to state claims upon which relief can be granted.

This motion is based on this notice, the memorandum of points and authorities, the request for judicial notice and the exhibits presented therein and filed concurrently herewith, the papers and pleadings on file, and upon such other matters as may be presented to the Court at the time of the hearing.

KERR
&
WAGSTAFFE
LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

In August 2007, the owners of the LLC plaintiffs in this case announced that they were opening a 48-bed residential drug and alcohol treatment center called the Alta Mira Treatment Program ("AMTP") at the location of the historic Alta Mira hotel in Sausalito and seven surrounding houses.  Although local law plainly requires a conditional use permit and license to operate such a facility, AMTP's owners made no attempt to obtain the requisite City approval, declaring that they fell within a state law designating small, six or fewer patient facilities, as "residential" uses exempt from local control.  AMTP attempts to shoehorn itself into that small residential facility exception by obtaining state licenses for each of the eight buildings on its campus despite their common operation and ownership.

After exploring its options, and determining that the AMTP appears to be one joint program serving more than six people, not eight separate "residential" programs, the City of Sausalito sent the AMTP's owners a "cease and desist" letter requesting they obtain a conditional use permit and otherwise comply with local law before operating the facility.  AMTP refused to comply, insisting that it is eight separate facilities, not one.  Faced with this factual disagreement, the City of Sausalito filed suit in Marin County Superior Court, seeking to determine if AMTP is legally and factually one facility subject to local law, or eight facilities exempt from local law.  The City's lawsuit seeks declaratory relief and an injunction *if* the State Court determines that AMTP is one facility subject to local law (with which AMTP has admittedly not complied).  Other than filing the Marin County action, the City of Sausalito has ***not taken any action*** to interfere with the ongoing operation of AMTP.

AMTP's response to the City's lawsuit was this suit, which it brought for the express purpose of halting the Marin County action and having the issues in that action decided by this Court.  AMTP claims that bringing a lawsuit to determine whether it must comply with local law was a violation of the federal Fair Housing Act, Americans With Disabilities Act, and "due process" because AMTP *claims* that it is eight facilities, and insists that anything other than an automatic acceptance of AMTP's implausible factual claim violates its rights.  In a transparent

1  attempt to avoid anti-injunction and abstention doctrines, AMTP's operators have joined several

2  former and current clients as plaintiffs, even though the City has not engaged in any conduct

3  toward those individuals, whose stays at the AMTP have been unimpeded.

4          This action should be dismissed.  To begin with, the City of Sausalito has a constitutional

5  right to seek redress in the state courts by filing a lawsuit concerning its dispute with the AMTP.

6  Under the Noerr-Pennington doctrine, neither the City's lawsuit nor the pre-suit cease and desist

7  letter provides a basis for any federal claim against it.  As this is the *only* enforcement conduct

8  the City has (or is alleged to have) taken against AMTP, this entire case fails as a matter of law.

9          Moreover, the express purpose of this action is to enjoin the Marin County action.  Both

10  the Anti-Injunction Act and the Younger abstention doctrine prevent the federal district courts

11  from being misused to hijack pending state court proceedings in this fashion.  Although AMTP

12  has attempted to plead around Younger by joining several clients, in these circumstances the

13  claims of those clients – who also seek to enjoin the Marin County action – are so intertwined

14  with those of the AMTP operators that they fall within Younger's abstention rule.  As such, the

15  claims for injunctive relief should be dismissed, and any claim for monetary damages that

16  survives this motion (none should) stayed pending resolution of the Marin County action.

17          Finally, this action should be dismissed because its claims lack substantive merit.  The

18  individual plaintiffs have not been harmed by any action by the City, the operator-plaintiffs'

19  section 1983 claims cannot be based on the ADA, and the "due process" claim is mere

20  boilerplate.  There is simply nothing that Sausalito has done that violates any of the plaintiffs'

21  rights under any theory.

22          One of two things will happen in the Marin County Superior Court.  Either the AMTP

23  will be determined to serve more than six persons, in which case it must comply with local law,

24  or it will not, in which case the City agrees local law does not apply.  Either result moots the

25  "discrimination" claims brought here, and the City of Sausalito respectfully requests the Court to

26  dismiss this case, and not to interfere with the Marin County Superior Court's jurisdiction to

27  resolve this important issue of local law.

28

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case seeks to enjoin a pending state court proceeding, *City of Sausalito v. Sausalito Alta Mira, LLC, et al.*, Marin County Superior Court Case No. 074789, (the "Marin County action").  Both this case and the Marin County action arise out of a common set of facts, which are recited below.

### A.    AMTP BEGINS OPERATION AND SAUSALITO FILES THE MARIN COUNTY ACTION

Defendant City of Sausalito ("Sausalito") is a California municipality.  (First Amended Complaint ["FAC"] ¶ 18.)  Plaintiffs Harrison Ventures, LLC, Bulkley Ventures, LLC, and Sausalito Alta Mira, LLC, (collectively, the "AMTP Operators") each do business under the same registered fictitious business name:  the Alta Mira Treatment Program ("AMTP").  (FAC ¶¶ 14-16; RJN Ex. A).[1]  The AMTP is a "life recovery center" located in Sausalito at 96, 100, 110, and 125 Harrison Avenue, 125, 135, and 141 Bulkley Avenue, and 25 Santa Rosa Avenue. (FAC ¶¶ 14-16; see www.altamirarecovery.com.)

The AMTP Operators applied for eight separate licenses with the California Department of Alcohol and Drug Programs between April 2006 and June 2006.  (FAC ¶ 47.)  ADP subsequently issued the licenses.  (Id.)  Although it is only licensed by ADP to provide residential drug and alcohol treatment, AMTP advertises and apparently provides non-residential and non-drug or alcohol related services as well, including unlicensed eating disorder services and "retreats" for the general public.  (RJN Ex. E ¶¶ 31-32; see www.altamirarecovery.com.)

---

[1]    The Request for Judicial Notice ("RJN") filed herewith attaches documents expressly referred to in plaintiffs' amended complaint and other matters subject to judicial notice.  All of these materials are properly considered on a motion to dismiss.  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."); Intri-Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) ("'[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment,' as long as the facts noticed are not 'subject to reasonable dispute.'").

KERR
&
WAGSTAFFE
LLP

1    On September 7, 2007, Sausalito sent the AMTP Operators a letter (the "September 7

2    Letter").[2]  (FAC ¶ 51; RJN Ex. B.)  The September 7 Letter informed the AMTP Operators that

3    it had come to Sausalito's attention that the AMTP Operators had been granted licenses to

4    operate a 48-bed drug and alcohol treatment center and that because the center was located in a

5    residential area they would need to apply for and obtain a conditional use permit in accordance

6    with the applicable provisions of the City's Zoning Code.  (FAC ¶ 51; RJN Ex. B.)  The

7    September 7 Letter further informed the AMTP Operators that they needed to apply for and

8    obtain a City business license, and would have to pay applicable taxes.  (Id.)  The letter warned

9    that the City would seek legal action if AMTP did not comply with local law.  (Id.)

10    On or about September 10, 2007, according to the Complaint, the AMTP Operators

11    began operation.  (FAC ¶ 48.)  By letter dated September 13, 2007, the AMTP Operators

12    responded to the September 7 Letter, stating that the AMTP Operators were not operating a 48-

13    bed drug and alcohol treatment facility, but instead were operating 8 facilities, each serving six

14    or fewer residents.  (FAC ¶ 52; RJN Ex. C.)  Accordingly, the AMTP Operators argued, they

15    were not required to apply for a conditional use permit from the City.

16    Faced with this dispute over whether the AMTP is subject to local law, Sausalito filed the

17    Marin County action on October 9, 2007.[3]  The suit alleges claims for nuisance, declaratory

18    relief, and injunctive relief, all arising from the City's contention that the AMTP is one program

19    serving more than six people, and therefore subject to City zoning laws, including the need to

20    apply for a conditional use permit and business license.  (RJN Exs. D & E.)  The Marin County

21    action squarely presents this as the central issue in the state court case:

22    15.  The Health and Safety Code contains no blanket exemption
     from local zoning and tax regulations for alcohol and drug
23    treatment facilities.  It does, however, contain limited exemptions
     for residential facilities that serve six or fewer persons.
24

25    16.  One of these exemptions is found in Health and Safety Code
     section 11834.23, which states that an alcohol or drug abuse
     recovery or treatment facility serving six or fewer persons is
26

27    [2]    The September 7 Letter was not sent to any of the individual plaintiffs.  (Id.)

28    [3]    An Amended Complaint was subsequently filed.  (RJN Ex. E.)

considered a residential use of property, and that "[n]o conditional use permit, zoning variance, or other zoning clearance shall be required of an alcoholism or drug abuse recovery or treatment facility which serves six or fewer persons that is not required of a single-family residence in the same zone."

17.  Another of these exemptions is found in Health and Safety Code section 11834.22, which states that [a]n alcoholism or drug abuse recovery or treatment facility which serves six or fewer persons shall not be subject to any business taxes, local registration fee, use permit fees, or other fees to which other single-family dwellings are not likewise subject."

18.  The purpose of such a "six or fewer" person exemption "is to move people out of institutions into 'normal' family-like surroundings, not to move institutions into residential neighborhoods." <u>McCaffrey v. Preston</u>, 154 Cal. App. 3d 422, 432 (1984).

19.  The central question in this case is whether the exemptions from local zoning and business tax laws found in Health and Safety Code sections 11834.23 and 11834.22 apply to AMTP.  If they do not apply, then the operation of AMTP requires a conditional use permit, a business license, the payment of business tax, and the payment of the City's transient occupancy tax.

(RJN Ex. D ¶¶ 15-19 & Ex. E ¶¶ 15-19.)

Sausalito's position in the Marin County action is well founded; the facts already available strongly suggest that AMTP is a single, large operation, not eight small and separate residential facilities.  Sausalito's factual basis for that assertion includes the joint management, advertising, description, and operation of the AMTP, as described in detail in paragraphs 21-33 of Sausalito's First Amended Complaint in state court.  (RJN Ex. E ¶¶ 21-33.)

The Marin County action seeks a declaration of rights on this issue, and, if Sausalito's position is correct, an injunction that would require the AMTP to obtain a conditional use permit and a business license, and pay applicable taxes, to continue in operation.  (<u>Id.</u> p. 12.)

**B.    THE AMTP OPERATORS FILE THIS ACTION TO ENJOIN THE MARIN COUNTY ACTION**

Rather than even request a conditional use permit from the City, or defend the Marin County action on its merits, the AMTP Operators waited nearly two months and then filed this action seeking to halt the Marin County action.  They joined as a plaintiff Peter Morton, an

1    individual who is alleged to be a past resident of the Alta Mira Treatment Program and who

2    "may" return to treatment at some unspecified future time.  (Compl. ¶ 9.)

3           On December 7, 2007, the AMTP Operators and Morton filed their First Amended

4    Complaint ("FAC").  They added four more current or former residents of the AMTP as

5    plaintiffs:  Rebecca Watt, Connie Cowden, Kimberley Mitchell-Sellwood, and Stephanie Lynde.

6    (FAC ¶¶ 10-13.)  Those individuals, together with Morton, are referred to herein as the

7    "Individual Plaintiffs."  The FAC alleges three federal causes of action:  (1) a cause of action

8    pleaded under both the Fair Housing Amendments Act and 42 U.S.C. § 1983; (2) a cause of

9    action pleaded under both the Americans With Disabilities Act and 42 U.S.C. § 1983; and (3) a

10   cause of action pleaded under the Due Process Clause and 42 U.S.C. § 1983.

11          Each of plaintiffs' three causes of action rests on a common set of facts.  The FAC

12   alleges that the AMTP Operators operate eight separate facilities, each serving six or fewer

13   persons  — the exact factual dispute presented in the Marin County action.  (FAC ¶ 48.)  The

14   FAC then alleges that *because* the AMTP is eight small facilities, Sausalito has discriminated

15   against the AMTP Operators and the Individual Plaintiffs by seeking to apply local law to the

16   AMTP.  (FAC ¶ 58.)  But all Sausalito is alleged to have actually *done* is to send the September

17   7 Letter and file the Marin County action.  (FAC ¶¶ 51, 53.)  The plaintiffs do not — because

18   they cannot — allege that a conditional use permit has been applied for, much less denied, or that

19   Sausalito has taken any non-judicial enforcement action to stop the AMTP Operators from

20   operating the AMTP.  In fact, the plaintiffs acknowledge that the AMTP ***is currently operating***.

21   (FAC ¶¶ 14-16.)

22          The FAC expressly seeks an injunction against the Marin County action and declaratory

23   relief that AMTP Operators are operating facilities serving six or fewer persons and so must be

24   treated as residences.  (FAC at 19.)  This action also seeks broadly phrased injunctive relief that

25   may generally be summed up as an injunction against Sausalito regulating the AMTP.  (FAC at

26   18-19.)  In every meaningful way, this lawsuit is simply the flip-side of the Marin County action,

27   and seeks to have the facts and law at issue in that action decided by this Court instead of the

28   Marin County Superior Court.

III.   **LEGAL ARGUMENT**

   A.   **THIS ACTION MUST BE DISMISSED UNDER THE NOERR-PENNINGTON DOCTRINE**

      1.   **Noerr-Pennington protects the rights of all persons, including cities, to petition the courts for adjudication of their rights**

A basic principle of American jurisprudence is that persons have a right to use the courts, and cannot be sued for doing so.[4]  In federal law, this principle is embodied in the Noerr-Pennington doctrine.  The Noerr-Pennington doctrine is founded in the Petition Clause of the First Amendment, which guarantees "the right of the people ... to petition the Government for a redress of grievances."  U.S. Const., Amend. I.  Under the Noerr-Pennington doctrine, those who petition any department of the government – including the courts – for redress are generally immune from any statutory liability for that conduct.  Empress LLC v. City & County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005) (citing Manistee Town Ctr. v. City of Glendale, 227 F.3d 1090, 1092 (9th Cir. 2000)); White v. Lee, 227 F.3d 1214, 1231-32 (9th Cir. 2000).

Although the doctrine was first announced in antitrust cases,[5] it has been expanded to cover *all* aspects of federal statutory law.  The Ninth Circuit has unequivocally held that "the Noerr-Pennington doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause."  Sosa v. DIRECTV, Inc., 437 F.3d 923, 931 (9th Cir. 2006); see also White, 227 F.3d at 1231 (holding that because it "is based on and implements the First Amendment right to petition," the Noerr-Pennington doctrine "applies equally in all contexts").  The Noerr-Pennington doctrine functions as a rule of statutory construction requiring that a court "construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise."  Sosa, 437 F.3d at 931.

---

[4]     The only general exception is a malicious prosecution action brought *after* the first case is resolved.  See Kimes v. Stone, 84 F.3d 1121, 1126-27 (9th Cir. 1996).

[5]     See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) (holding that attempts to lobby the legislative branch could not be the predicate for antitrust liability); United Mine Workers v. Pennington, 381 U.S. 657 (1965) (expanding holding of Noerr to efforts to lobby the executive branch).


KERR
&
WAGSTAFFE
LLP

1    Just as the traditional "litigation privilege" recognized by state courts extends to pre-

2    litigation conduct, including demand or cease and desist letters, so does the <u>Noerr-Pennington</u>

3    doctrine.  <u>Sosa</u>, 437 F.3d at 935-37.  "[T]he law of this circuit establishes that communications

4    between private parties are sufficiently within the protection of the Petition Clause to trigger the

5    <u>Noerr-Pennington</u> doctrine, so long as they are sufficiently related to petitioning activity."  <u>Id.</u> at

6    935 (pre-suit demand letter falls within <u>Noerr-Pennington</u>).

7                    **2.    Sausalito's conduct is privileged under <u>Noerr-Pennington</u>**

8    Plaintiffs' lawsuit is based on Sausalito (1) sending a cease and desist letter asking

9    AMTP to comply with local law, and (2) filing the Marin County action to resolve the dispute

10   when AMTP refused to do so.  (FAC ¶¶ 51-53.)  Sausalito's use of the state courts to resolve the

11   dispute between it and AMTP is constitutionally privileged, and this lawsuit should therefore be

12   dismissed.

13   First, there is no question about whether <u>Noerr-Pennington</u> protects the right of cities to

14   seek relief from the courts.  It does.  <u>Manistee Town Ctr.</u>, 227 F.3d at 1092-94.

15   Second, filing the Marin County action was unquestionably protected petitioning activity.

16   <u>Bill Johnson's Restaurants, Inc. v. N.L.R.B.</u>, 461 U.S. 731, 741 (1983) (filing a lawsuit is

17   petitioning activity); <u>Professional Real Estate Investors, Inc. v. Columbia Pictures, Inc.</u>, 508 U.S.

18   49, 57 (1993) (same).  The September 7 cease and desist letter, which was necessary to establish

19   that there was a dispute for the state court to adjudicate, is also unquestionably related to the

20   Marin County action and thus within the scope of the First Amendment protection enforced by

21   <u>Noerr-Pennington</u>.[6]  <u>Sosa</u>, 437 F.3d at 935.

22   Because Sausalito's lawsuit is a protected petitioning activity, it cannot provide a basis

23   for liability unless it is an objectively baseless "sham."  As the Ninth Circuit explained in <u>White</u>:

24   With respect to petitions brought in the courts, the Supreme Court
has held that a lawsuit is unprotected only if it is a "sham"- i.e.,

25

26   [6]    The City notes that the AMTP Operators sent a similar pre-lawsuit letter before filing this

27   action, asking the City to "accommodate" them by simply accepting their disputed factual
assertion that they are operating eight facilities serving six or fewer people each.  (FAC ¶ 55.)

28   That, of course, is the very issue the Marin County action is designed to answer.

1                           "objectively baseless in the sense that no reasonable litigant could

2                           realistically expect success on the merits." ...

3 White, 227 F.3d at 1231 (citations omitted).  Plaintiffs' allegations of subjective bad intent are

4 irrelevant:  "an objectively reasonable effort to litigate cannot be sham regardless of subjective

5 intent."  Professional Real Estate Investors, Inc., 508 U.S. at 57.  On its face, this dispute is not

6 objectively baseless, but is based on serious factual concerns over whether AMTP is one

7 business serving more than six people.  (RJN Ex. E ¶¶ 21-33.)

8         Third, as the Ninth Circuit has explained, Noerr-Pennington applies "equally in all

9 contexts," and thus bars all of plaintiffs' claims.  See White, 227 F.3d at 1231-32 (holding that a

10 lawsuit may not serve as the basis for an FHA claim unless it is objectively baseless); Manistee,

11 227 F.3d at 1093 (applying Noerr-Pennington to Section 1983 claims).

12         Finding itself in a dispute with the AMTP, Sausalito did not send in the police to close

13 down AMTP's business or engage in any other form of administrative self-help.  It properly filed

14 a lawsuit asking for the state judiciary's assistance in determining which of the parties'

15 interpretation of state law is correct and, if its position is upheld, to enforce the application of

16 relevant law.  That constitutionally privileged conduct cannot form the basis for any claim

17 against Sausalito, and plaintiffs' claims should be dismissed.

18     **B.**    **THE MARIN COUNTY ACTION SHOULD NOT BE ENJOINED IN ANY EVENT**

19         Plaintiffs' attempt to use this lawsuit as a means of enjoining the Marin County action

20 also violates well established principles of federal-state comity.  Plaintiffs' FHA and ADA

21 claims cannot obtain an injunction of the Marin County action because neither statute provides

22 an exception to the general Anti-Injunction Act, 28 U.S.C. § 2283, which bars federal courts

23 from enjoining state proceedings in most circumstances.

24         Plaintiffs' amended complaint attempts to avoid this patent flaw in their case by pleading

25 the same conduct as a violation of 42 U.S.C. § 1983, a statute that does provide an exception to

26 the Anti-Injunction Act.  That claim, however, is nonetheless barred by the Younger abstention

27 doctrine which, for the same comity reasons as the Anti-Injunction Act, prohibits federal courts

28 from interfering with ongoing state lawsuits that involve important state interests such as those

1    presented here.  For these reasons too, plaintiffs' claims should be dismissed or, at a minimum,

2    stayed until the Marin County action has concluded.

3              **1.    The FHA and ADA claims fall within the Anti-Injunction Act**

4         The Anti-Injunction Act provides:

5              A court of the United States may not grant an injunction to stay
              proceedings in a State court except as expressly authorized by Act
6              of Congress, or where necessary in aid of its jurisdiction, or to
              protect or effectuate its judgments.
7

8    28 U.S.C. § 2283.  The Anti-Injunction Act bars federal intervention in state court proceedings

9    "in all but the narrowest of circumstances."  <u>Sandpiper Village Condominium Assoc., Inc. v.</u>

10   <u>Louisiana-Pacific Corp.</u>, 428 F.3d 831, 842 (9th Cir. 2005) (citing <u>Alton Box Bd. Co. v. Esprit</u>

11   <u>de Corp.</u>, 682 F.2d 1267, 1271 (9th Cir. 1982); <u>Bennett v. Medtronic</u>, 285 F.3d 801, 805 (9th Cir.

12   2002)).  The Supreme Court has held that the three exceptions to the Anti-Injunction Act, which

13   are set forth in the statute itself, will not be "enlarged by loose statutory construction."  <u>Atlantic</u>

14   <u>Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs</u>, 398 U.S. 281, 287 (1970).  Instead, "[a]ny

15   doubts as to the propriety of a federal injunction against state proceedings [will] be resolved in

16   favor of permitting the state courts to proceed."  <u>Id</u>.

17        None of the three exceptions applies to the FHA or ADA claims.  First, neither the FHA

18   nor the ADA contain an express exception to the Anti-Injunction Act.  <u>See</u> <u>Casa Marie, Inc. v.</u>

19   <u>Superior Court of Puerto Rico</u>, 988 F.2d 252, 261-62 (1st Cir. 1993) (finding that the FHA does

20   not contain an express exception to the Anti-Injunction Act, holding that the Anti-Injunction Act

21   precluded federal injunctive relief against a state court action); <u>Safe Haven Sober Houses, LLC</u>

22   <u>v. City of Boston</u>, 517 F. Supp. 2d 557, 568-69 (D. Mass. 2007) (holding that the FHA and ADA

23   have no express exceptions to the Anti-Injunction Act, and declining to grant injunctive relief

24   against a state proceeding); <u>Rodriguez v. Westhab, Inc.</u>, 833 F. Supp. 425, 428 (S.D.N.Y. 1993)

25   (holding that the FHA and ADA create no exception to the Anti-Injunction Act).

26        Second, an injunction is not necessary in aid of this Court's jurisdiction.  This exception

27   generally concerns actions *in rem*, <u>Sandpiper Village</u>, 428 F.3d at 843-44, which the Marin

28   County action is not.  "'An injunction cannot issue to restrain a state court action' simply

1  because it involves the 'same subject matter at issue before the federal court.'" <u>Sandpiper</u>

2  <u>Village</u>, 428 F.3d at 844 (citation omitted).  Besides, the state court action here was not filed in

3  an attempt to oust the federal court of jurisdiction – the opposite is true.  The Marin County

4  action was filed first, and this action was filed only in an attempt to enjoin the Marin County

5  action.  The second exception to the Anti-Injunction Act simply does not apply.

6       The third exception, the so-called "relitigation exception," also does not apply because

7  there are no orders or judgments to protect or effectuate.  An "essential prerequisite to the

8  relitigation exception is that the claims or issues which the federal injunction insulates from

9  litigation in state proceedings actually have been decided by the federal court." <u>Chick Kam</u>

10  <u>Choo v. Exxon Corp.</u>, 486 U.S. 140, 148 (1988).  That has not happened here.

11       The Anti-Injunction Act applies to injunctions and to requests for declaratory relief that

12  would have the same practical effect as an injunction.  <u>California v. Randtron</u>, 284 F.3d 969, 975

13  (9th Cir. 2002) ("The Anti-Injunction Act also applies to declaratory judgments if those

14  judgments have the same effect as an injunction.").  Because all of the relief sought by plaintiffs

15  under their FHA and ADA theories falls within this rule, those claims should be dismissed.

16                **2.    This action also falls within the <u>Younger</u> abstention doctrine**

17       The issues of federal-state comity protected by the Anti-Injunction Act are also enforced

18  by the <u>Younger</u> abstention doctrine, first announced in <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

19  That doctrine "'forbid[s] federal courts [from] stay[ing] or enjoin[ing] pending state court

20  proceedings." <u>AmerisourceBergen Corp. v. Roden</u>, 495 F.3d 1143, 1147 (9th Cir. 2007).  Where

21  a case comes within <u>Younger</u> abstention, claims for injunctive and declaratory relief are to be

22  dismissed and claims for money damages are to be stayed pending the outcome of the state

23  proceeding.  <u>AmerisourceBergen</u>, 495 F.3d at 1148.  Unlike the Anti-Injunction Act, there is no

24  exception to <u>Younger</u> for section 1983 claims.  <u>Gilbertson v. Albright</u>, 381 F.3d 965, 979-80 (9th

25  Cir. 2004) (en banc) (holding <u>Younger</u> abstention applied to section 1983 claim).

26       <u>Younger</u> applies whenever: (1) there are ongoing state judicial proceedings; (2) the

27  proceedings implicate important state interests; (3) the state proceedings provide the plaintiff

28  with an adequate opportunity to raise federal claims; and (4) the federal court action would

KERR
&
WAGSTAFFE
LLP

1  enjoin or have the practical effect of enjoining the proceeding.  AmerisourceBergen, 495 F.3d at

2  1149; Gilbertson, 381 F.3d 965, 978 (9th Cir. 2004) (en banc); Sutton v. Teets, No. C-05-4469

3  VRW, 2006 WL 1465232, *1-*2, 2006 U.S. Dist. LEXIS 37016 (N.D. Cal. May 24, 2006)

4  (staying federal constitutional claims where deciding them would have the effect of enjoining

5  state court proceedings).  Each of these elements is satisfied here.

6        First, there is an ongoing state judicial proceeding:  the Marin County action.  (FAC ¶ 53;

7  RJN Exs. D & E.)

8        Second, the Marin County action implicates important state interests because it is based

9  on nuisance and brought to enforce local land use laws.  (RJN Exs. D & E.)  Actions for nuisance

10  and to enforce land use laws have repeatedly been held to implicate important state interests and

11  be within Younger.  Huffman v. Pursue, Ltd., 420 U.S. 592, 606-07 (1975) (holding district court

12  erred in failing to apply Younger principles to federal action seeking injunction against state

13  nuisance proceeding); Woodfeathers, Inc. v. Washington County, Oregon, 180 F.3d 1017, 1021

14  (9th Cir. 1999) (holding that county's nuisance action implicated an important state interest for

15  purposes of Younger); World Famous Drinking Emporium, Inc. v. City of Tempe, 820 F.2d

16  1079, 1083 (9th Cir. 1987) (same); Korean Buddhist Dae Won Sa Temple of Hawaii v. City and

17  County of Honolulu, 952 F. Supp. 679, 684-85 (D. Hawaii 1996) (holding that city's lawsuit to

18  enforce land use laws satisfied important state interests prong of Younger).

19        The third prong is also met.  Both the ADA and FHA claims may be raised in the Marin

20  County action.  Federal and state courts have concurrent jurisdiction over those claims.  Hapgood

21  v. City of Warren, 127 F.3d 490, 494 (6th Cir. 1997) (recognizing that state courts have

22  concurrent jurisdiction over ADA claims); Black v. Department of Mental Health, 83 Cal. App.

23  4th 739, 745 n.4 (2000) ("state courts have concurrent jurisdiction of ADA claims"); 42 U.S.C. §

24  3613(a)(1)(A) (FHA); Barber v. Rancho Mortgage & Investment Corp., 26 Cal. App. 4th 1819,

25  1827 n.1 (1994) ("Under the terms of [the FHA] state courts have concurrent jurisdiction of

26  private enforcement actions.").[7]

27  _____

28  [7]     In addition, plaintiffs' claims are all based on their factual argument that AMTP is eight
facilities serving six or fewer people each on a residential basis.  If that is found true in state

1    The fourth prong of <u>Younger</u> abstention under <u>AmerisourceBergen</u> and <u>Gilbertson</u> is also

2    met, because this action directly seeks to enjoin the Marin County action, and indeed to have the

3    very pursuit of that action declared unlawful discrimination.  (Compl. at 20.)  There is no

4    question that this lawsuit would interfere with the Marin County action "in a way that <u>Younger</u>

5    disapproves."  <u>See</u> <u>Gilbertson</u>, 381 F.3d at 978.  The very purpose of this action is to remove

6    from the California court the central question of whether the AMTP is one or eight facilities and

7    put that question before the federal court.  That sort of interference is directly contrary to

8    <u>Younger</u> and the established principles of comity and federalism embodied in the <u>Younger</u>

9    doctrine.[8]

10    There are no exceptions to <u>Younger</u> abstention for FHA, ADA, or section 1983 claims.

11    <u>D.L. v. Unified School District No. 497</u>, 392 F.3d 1223, 1229-30 (10th Cir. 2004) (holding

12    abstention appropriate where federal case asserted ADA claims); <u>Casa Marie</u>, 988 F.2d at 264

13    (holding <u>Younger</u> abstention appropriate for FHA claim); <u>Hemlock Crossing, LLC v. Logan</u>

14    <u>Township</u>, No. 3:07-26, 2007 WL 1203015, at *1, 2007 U.S. Dist. LEXIS 29731, (W.D. Pa. Apr.

15    23, 2007) (holding <u>Younger</u> abstention warranted refusal to enjoin state proceedings under

16    FHA); <u>Damascus v. Office of the Attorney General</u>, No. C 95-20073 RMW (EAI), 1995 WL

17    261414, *5 (N.D. Cal. May 2, 1995) (holding <u>Younger</u> abstention proper despite presence of

18    ADA claim; ADA claim could have been brought in pending state court action); <u>Gilbertson</u>, 381

19    F.3d at 978, 979-80 (holding <u>Younger</u> abstention applied to section 1983 claim).

20

21    court, then Sausalito's non-residential laws will not apply to AMTP, and there will be no federal
issue anyway.

22    [8]    "The principle behind the Supreme Court's initial invocation of the abstention doctrine in

23    *Younger* was its conviction that '[s]ince the beginning of this country's history Congress has,
subject to few exceptions, manifested a desire to permit state courts to try state cases free from

24    interference by federal courts.' 401 U.S. at 43.... Under the system the Court called 'Our
Federalism,' it explained, 'the National Government, anxious though it may be to vindicate and

25    protect federal rights and federal interests, always endeavors to do so in ways that will not
unduly interfere with the legitimate activities of the States.' *Id.* at 44.... Thus, the Court

26    concluded, 'the normal thing to do when federal courts are asked to enjoin pending proceedings
in state courts is not to issue such injunctions." *Id.* at 45.'" <u>M&A Gabaee v. Community</u>

27    <u>Redevelopment Agency of City of Los Angeles</u>, 419 F.3d 1036, 1039-1040 (9th Cir. 2005)

28    (citing <u>Younger</u>, 401 U.S. 37).

1    Plaintiffs will no doubt argue that <u>Younger</u> abstention cannot be applied here because the

2    Individual Plaintiffs are not parties to the Marin County action.[9]  In general, <u>Younger</u> only

3    applies where the federal parties are the same as the state parties because, if they are not, there is

4    not the same risk of interference with the state court action.  Where, however, the parties' rights

5    are intertwined and the new parties actually seek to interfere with the state court case, <u>Younger</u>

6    does apply.  <u>See</u> <u>Unified School District No. 497</u>, 392 F.3d at 1230 ("when in essence only one

7    claim is at stake and the legally distinct party to the federal proceeding is merely an alter ego of a

8    party in state court, <u>Younger</u> applies").

9    The relevant principle was first recognized in <u>Hicks v. Miranda</u>, 422 U.S. 332, 348-49

10   (1975).  In <u>Hicks</u>, police officers in Orange County, California seized several copies of the adult

11   film "Deep Throat" and charged two theater employees with displaying an obscene film.  The

12   theater owner filed a federal lawsuit challenging California's obscenity laws and seeking return

13   of the film.  Despite the fact that the theater owner was not, itself, being prosecuted in state court,

14   the Supreme Court recognized that enjoining application of the law in the federal case would

15   have the effect of enjoining the state court prosecution against the federal plaintiff's employees,

16   and found the federal suit barred by <u>Younger</u>.  "The rule in <u>Younger v. Harris</u> is designed to

17   'permit state courts to try state cases free from interference by federal courts,' ...particularly

18   where the party to the federal case may fully litigate his claim before the state court.  Plainly,

19   '(t)he same comity considerations apply,' ... where the interference is sought by some, such as

20   appellees, not parties to the state case." <u>Hicks</u>, 422 U.S. at 349.

21   The Ninth Circuit has more recently explained this rule as follows:  "a party whose

22   interest is so intertwined with those of the state court party that direct interference with the state

23   court proceeding is inevitable may, under <u>Younger</u>, not proceed." <u>Green v. City of Tucson</u>, 255

24

25

26   _____

[9]    Indeed, that seems to be their sole purpose for naming these Individual Plaintiffs, with
whom the City has had no contact.  The City notes that <u>Younger</u> abstention is applied party-by-
party, so in all events the presence of these other plaintiffs will not prevent dismissal of the
AMTP Operators' claims.  <u>See</u> <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922, 929 (1975); <u>Canatella v.</u>
<u>California</u>, 404 F.3d 1106, 1114 (9th Cir. 2005).

1   F.3d 1086, 1100 (9th Cir. 2001), *partially overruled on other grounds in* <u>Gilbertson v. Albright</u>,

2   381 F.3d 965, 969 (9th Cir. 2004).  This rule squarely applies here.

3        Here, the state defendants are the owners/operators of the AMTP, and the additional

4   federal plaintiffs are former or current residents of the AMTP.  As in <u>Hicks</u>, the Individual

5   Plaintiffs' interests are intertwined with those of the AMTP Operators, warranting <u>Younger</u>

6   abstention.  The Individual Plaintiffs' only expressed interests are to receive the services AMTP

7   sells, which they can do if AMTP is being lawfully operated, and cannot do if it is not.  Just as

8   with the theater owner and employees in <u>Hicks</u>, adjudication of the client Individual Plaintiffs'

9   claimed "rights" to attend the AMTP will necessarily interfere with the Marin County action

10  against the AMTP's operators concerning their right to operate AMTP without compliance with

11  any local laws.  Indeed, not only is "direct interference with the state court proceeding ...

12  inevitable," <u>see</u> <u>Green</u>, 255 F.3d at 1100, the Individual Plaintiffs expressly seek such

13  interference!  As a result, <u>Younger</u> abstention applies to their claims despite the fact that

14  Sausalito (which had never even heard of them before they sued the City) did not name these

15  individuals as defendants in the Marin County action.[10]

16       C.    **THE INDIVIDUAL PLAINTIFFS HAVE NOT SUFFERED AN INJURY IN FACT AND
                THEREFORE LACK STANDING UNDER ARTICLE III**

17

18       Aside from immunity and abstention, the Individual Plaintiffs simply lack standing to

19  appear in this case because nothing has happened to them.  To have standing to bring any of their

20  claims, the Individual Plaintiffs must have suffered an "'injury in fact,'— an invasion of a

21  legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

22  conjectural or hypothetical." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)

23  (internal quotation marks, citations, and footnote omitted).  The Individual Plaintiffs do not and

24  cannot allege any such injury in fact.

25

26  [10]    The Individual Plaintiffs do not allege, nor can they honestly allege, that they have

27  attempted to intervene in the Marin County action.  The City has no objection to such
    intervention, as state court proceedings do not require the same injury in fact required for federal

28  standing.

1    All of the Individual Plaintiffs are current or former clients of the AMTP.  (FAC ¶¶ 9-

2  13.)  Sausalito has not sued them or even had any communications with them at all pertaining to

3  the operation of the AMTP.  Not one of the Individual Plaintiffs alleges that they have actually

4  been excluded from the AMTP, or that the City has done anything that has actually interfered

5  with their "housing" in the AMTP "Properties" (assuming *arguendo* that a short term stay at

6  such a large facility is "housing" in the first place).  Rather, the injury the Individual Plaintiffs

7  allege is hypothetical.  The hypothetical injury goes something like this:  *if* the City prevails in its

8  Marin County action, meaning that the state court decides that the AMTP is one facility, not

9  eight, *and* the Operator Plaintiffs apply for a conditional use permit, *and* the permit is denied,

10  *and* the Alta Mira Treatment Program is closed lacking issuance of such permit, then the

11  Individual Plaintiffs will have been denied housing of their choice "on account of a disability."[11]

12  This speculation about future injury does not present a ripe claim for adjudication.

13    The Individual Plaintiffs' conclusory allegations of injury do not overcome this defect.

14  The party invoking the jurisdiction of the federal court "has the burden of alleging specific facts

15  sufficient to satisfy" each of the standing requirements, including injury in fact.  See Schmier v.

16  U.S. Court of Appeals for the Ninth Circuit, 279 F.3d 817, 821 (9th Cir. 2002).  Despite this,

17  plaintiffs merely allege in boilerplate fashion that they have suffered "***the threat and risk*** of

18  losing housing and/or prospective housing, emotional and mental anguish, embarrassment,

19  humiliation, loss of civil rights, loss of income, and damage to reputation and standing within the

20  community."  (FAC ¶ 63 (emphasis added).)  The "risk" that, in the future, the AMTP program

21  plaintiffs want to attend will be determined to be operating illegally does not create a

22  constitutionally cognizable injury in fact to these Individual Plaintiffs.  See Lujan, 504 U.S. at

23  564 ("'some day' intentions – without any description of concrete plans, or indeed even any

24  specification of when the some day will be – do not support a finding of the 'actual or imminent'

25  injury that our cases require.").

26

27

28  [11]    Of course, in those circumstances the denial would *not* be based on the Individual
Plaintiffs' disabilities, but on the fact that AMTP is not licensed to operate as a 48-bed facility.

1    Because none of the Individual Plaintiffs allege facts that demonstrate any injury in fact

2    as a result of the City's conduct (which is privileged in any event), these Individual Plaintiffs

3    lack standing, and their claims should be dismissed.

**D.    THERE ARE ADDITIONAL SUBSTANTIVE PROBLEMS WITH PLAINTIFFS' CLAIMS THAT ALSO WARRANT DISMISSAL**

6    The <u>Noerr-Pennington</u>, Anti-Injunction, <u>Younger</u>, and standing issues discussed above all

7    provide ample basis for dismissing this action, and this case can thus be dismissed without

8    analysis of the other merits of plaintiffs' separate claims.  If those claims are examined further,

9    however, they will be found lacking for other reasons as well.

**1.    The 42 U.S.C. § 1983 claims should be dismissed for failure to state a claim**

12    Plaintiffs' allegations under Section 1983 merely parrot the language of the rule, and

13    provide no actual facts alleging a Section 1983 violation.  The elements of a Section 1983 claim

14    are (1) acts by the defendant (2) under color of state law (3) that deprived the plaintiff of federal

15    rights, privileges or immunities and (4) caused the plaintiff damage.  <u>Thornton v. City of St.</u>

16    <u>Helens</u>, 425 F.3d 1158, 1163-64 (9th Cir. 2005).  Section 1983 is not an independent source of

17    rights, but rather serves to vindicate rights elsewhere created.  <u>Id.</u> at 1164.

18    Plaintiffs allege three theories under 42 U.S.C. § 1983:  (1) a Section 1983 claim based

19    on Sausalito's alleged violation of the FHA claim; (2) a Section 1983 claim based on Sausalito's

20    alleged violation of the ADA; and (3) a Section 1983 claim based on Sausalito's alleged

21    violation of the Due Process clause.  For a variety of reasons, each of the 1983 claims fails.

*a)    The Individual Plaintiffs have not pleaded facts sufficient to state a claim under 42 U.S.C. § 1983 because there is no conduct directed toward them*

24    The Individual Plaintiffs are unable to point to any action that the City of Sausalito has

25    taken against them, and that is a fatal flaw in their Section 1983 claims.  Every Section 1983

26    plaintiff must allege action taken under color of state law that deprived the plaintiff of a

27    constitutional or statutory right.  <u>Thornton</u>, 425 F.3d at 1164.  Simply put, Sausalito has neither

28    taken action against them nor deprived them of any right.  Their claim rests on conduct (a letter

1    and a lawsuit) directed at the Operator Plaintiffs.  They have not been deprived residence in or

2    access to the AMTP; indeed, they allege that they received such residence/access.  (FAC ¶¶ 9-

3    13.)   Under these circumstances, the Individual Plaintiffs have no Section 1983 claim.

4           b)      *The Section 1983 claim in the Second Claim for Relief fails*
                    *because it is based on the alleged violation of the ADA*

5

6           Plaintiffs attempt to "double dip" by designating their ADA claim as brought *both* under

7    the ADA and under section 1983.  Where a federal statute provides a comprehensive remedial

8    enforcement scheme, courts decline to allow plaintiffs to proceed on Section 1983 claims that are

9    based solely on violations of those statutes.  See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th

10   Cir. 2002); Holbrook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997).

11          Applying this rule, the Ninth Circuit and other circuit courts have rejected Section 1983

12   claims that are based on violations of the ADA.  Vinson, 288 F.3d at 1156; Holbrook, 112 F.3d

13   at 1531; Alsbrook v. City of Maumelle, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc) (presuming

14   that Congress intended the ADA scheme to be exclusive because it serves as a "comprehensive

15   remedial scheme"); Grey v. Wilburn, 270 F.3d 607, 610-11 (8th Cir. 2001) (holding that the

16   ADA and the Rehabilitation Act are "comprehensive remedial schemes" that are not enforceable

17   through a § 1983 action).  The Section 1983 claim pleaded in the Second Claim for Relief is

18   based entirely on alleged ADA violations and therefore fails as a matter of law and should be

19   dismissed.

20          c)      *Plaintiffs have not alleged facts sufficient to state a Section 1983*
                    *claim under the Due Process clause*

21

22          Plaintiffs' final cause of action is a claim for violation of the Due Process clause, brought

23   under Section 1983.  It is not clear whether plaintiffs are alleging a violation of procedural or

24   substantive due process, but either way, their Third Claim for Relief is flawed.

25          Both a procedural and a substantive due process claim require that plaintiffs have been

26   deprived of a liberty or property interest.  See U.S. Const., Amend. XIV; Board of Regents of

27   State Colleges v. Roth, 408 U.S. 564, 571 (1972).  Neither life nor liberty are at issue here.

28   Plaintiffs have not and cannot allege the denial of a protected property interest.  Sausalito has not

KERR
&
WAGSTAFFE
LLP

1    shut down the AMTP; the AMTP Operators are still operating it and clients are still there.  If the

2    Marin County Superior Court determines that AMTP is *not* eight separate facilities, and thus is

3    subject to local law, no *protected* property interest will be denied by requiring the AMTP

4    Operators to follow applicable laws just like any other local business.  Therefore, as there is no

5    deprivation of any interest protected by the Due Process clause, Plaintiffs may not proceed on a

6    substantive due process claim.

7         Plaintiffs also may not proceed on a procedural due process claim because they do not

8    allege they were deprived of proper process.  A "procedural due process claim hinges on proof of

9    two elements: (1) a protectible liberty or property interest ...; and (2) a denial of adequate

10   procedural protections."  Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998).

11   Where the state actor provides adequate procedures, a procedural due process claim will fail.

12   Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 198-99 (2001) (holding that because

13   California provided adequate procedure for redress, there was no substantive due process

14   violation).  Here, Sausalito provides a process which is judicially noticeable and of which

15   Plaintiffs have not availed themselves.  Under Sausalito's municipal code, plaintiffs may apply

16   for a conditional use permit to operate the AMTP.  (See RJN Ex. F (Municipal Code Chapters

17   10.22 and 10.60).)  Plaintiffs have the right to apply for a permit, the right to a public hearing

18   before the Planning Commission, and the right to an appeal before the City Council in the event

19   the Planning Commission rules against them.  (See id.)  Plaintiffs do not allege that they have

20   availed themselves of this process.[12]  They cannot sue for violation of due process after refusing

21   to utilize the available state processes.  Hudson v. City of Chicago, 374 F.3d 554, 563 (7th Cir.

22   2004) ("A state cannot be held to have violated due process requirements when it has made

23   procedural protection available and the plaintiff has simply refused to avail himself of them.").

24

25

26   _____

27   [12]    To the extent that plaintiffs are claiming that the California courts do not allow due
     process in responding to claims filed therein, that claim is utterly frivolous.  Plaintiffs have every
28   right to defend themselves in the Marin County action, including the right to assert counter-
     claims or defenses under federal law if they so choose.

1

        **2.**        **Plaintiffs' allege no non-privileged conduct that can give rise to liability on any of their theories**

2

3        Finally, there simply is no conduct alleged by Sausalito that violates any of the Plaintiffs'

4  rights under the FHA, ADA, or section 1983.  Plaintiffs claims for relief under the FHA, ADA,

5  and 42 U.S.C. § 1983 amount to no more than a recital of the statutory elements of these causes

6  of action.  (FAC ¶¶ 66-71.)  That will not suffice to state a claim.  <u>Bell Atlantic Corp. v.</u>

7  <u>Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007).  Nor, ultimately, can the City be sued for

8  "discriminating" against a six or fewer bed residential drug treatment facility when the City itself

9  *admits* that its laws do not apply to such facilities.  The dispute is whether Plaintiffs' AMTP

10  business *is* such a facility, and it does not violate the ADA, FHA, or "due process" to have that

11  dispute.  To the extent plaintiffs are even attempting to state claims based on conduct other than

12  the Marin County action and its precursor September 7 letter, they have failed to allege enough

13  facts to do so, and any such inchoate claim should be dismissed.

14  **IV.**    **CONCLUSION**

15        The Marin County action is a relatively straightforward matter involving important,

16  disputed issues of fact and state law.  If, as Plaintiffs allege here, the AMTP is really eight small

17  residential drug treatment programs, then it will be found immune from local zoning laws (other

18  than those applicable to all residences), and even on their own theories no federal rights will be

19  violated.  If it is not found to be eight separate businesses, but instead one business, and is found

20  to be subject to local law, then the factual predicate for plaintiffs' discrimination claims will

21  simply not exist.  Either way, the Marin County Superior Court should be allowed to make that

22  determination free from interference by the federal courts.  For the foregoing reasons, therefore,

23  the City of Sausalito respectfully requests that the Court dismiss this action without leave to

24  amend or, at a minimum, dismiss plaintiffs' claims for declaratory and injunctive relief and stay

25  all claims for monetary relief until conclusion of the proceedings in the Marin County action.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

DATED: January 10, 2008       **KERR & WAGSTAFFE LLP**


By  ___/s_____
Michael von Loewenfeldt

Attorneys for Defendant
City of Sausalito